T. A. GARY AND ANOTHER *v.* THE STATE.

1. BAIL-BOND.— The condition of a bail-bond stipulated that the principal obligor should make his appearance before the proper court at its next ensuing term, and should there remain from day to day and from term to term until discharged, but omitted to stipulate that he should answer the accusation against him. *Held,* that the omission does not impair the validity of the bond.

2. SAME.— A surety signed a blank bail-bond and delivered it to his principal to be filled up with the penal sum of $300. The principal, being required to give bail in $1,000, presented the blank bond with the surety's signature, and the examining magistrate filled it with the sum of $1,000, conditioned for the appearance of the principal. The principal failed to appear and the bond was forfeited, and the surety, in defense to the *scire facias*, alleged the facts and pleaded *non est factum* to the bond. *Held,* that the act of the surety in signing and delivering the blank bond, knowing its purpose, made him liable for the amount inserted in it by the examining magistrate, who accepted it in ignorance of any limit to the surety's authorization. See the opinion *in extenso* on the question.

3. SAME — SHERIFF'S RETURN.— The Code of Procedure, article 462, provides that if a party arrested under a *capias* for felony had previously given bail to answer said charge, his sureties shall be released by the arrest, and he shall be required to give new bail. *Held* that, in a *scire facias* proceeding upon the original bail-bond, it was con-

petent for the State to controvert and disprove the sheriff's return on the *capias* to the effect that he had executed it by arresting the party. But it seems that a sheriff's return on a *capias* that he had "executed" it, without showing how, does not purport an actual arrest of the party.

4. New Trial.—Scire Facias proceedings on forfeited bail-bonds are not within the provision of the Code of Procedure which prohibits a new trial after verdict for the defendant.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. Gustave Cook.

This cause was decided at the Galveston term, 1881, but the record failed to reach the Reporters with the other cases of that term, and the transcript was destroyed by the fire which occurred in the court-rooms at Galveston, in January, 1882, and has never been received. The opinion of this court, however, seems to disclose all facts relevant to the rulings.

F. *Charles Hume*, and *Wheeler & Rhodes*, for the appellants.

H. *Chilton*, Assistant Attorney General, for the State.

Hurt, J. James H. Baker was charged before the justice of the peace of precinct No. three, Galveston county, with the offense of libel, and on the 7th day of August, A. D. 1874, he entered into bond, with appellants as his sureties, for his appearance at the next term of the Criminal District Court. The amount of the bond was $1,000. At the September term of said court the cause was reached and called for trial. The principal failing to appear, the bond was forfeited and judgment *nisi* was entered against him and against Gary and Bondies, his sureties. Upon this judgment *scire facias* issued. At the December term Bondies answered, insisting upon two grounds why the judgment *nisi* should not be made final.

The first ground urged in the answer is, "that he ob-

ligated himself to answer for the appearance of Baker,
the principal, at the *next term* of the Criminal District
Court, and for no other term; and that his principal did
appear at the next ensuing term," etc.   The second ground
relied upon in the answer is that the principal was ar-
rested upon a *capias* issued upon an indictment for the
same offense at the next term of the court, and that
thereby the defendant was released from the bond, this
re-arrest being a repudiation of the bond.   The answer
was filed on the 29th of December, 1874.   On the 24th of
May, 1875, the defendant Bondies, in an amended answer,
alleged another reason why the judgment should not be
made final, which is as follows: "That the bond upon
which the judgment is sought to be made final was signed
in blank by the principal and sureties, and afterwards
filled up by the justice of the peace; that he never exe-
cuted the said instrument, and that the same is not his
act and deed."

The defendant Gary answered by special exceptions to
the sufficiency of the bond, and then alleged several rea-
sons why the judgment should not be made final, which
will be found below.   Defendant Bondies adopted these
exceptions and all other matters pleaded by Gary.

The exceptions to the sufficiency of the bond are these:
1st.  That the bond does not state that the defendant Baker
is to appear and *answer* any accusation made against him
for violation of any law.   2d.  There is no offense known
to the law, set forth in the bond or condition of the bond,
that the said Baker is bound to *appear* and *answer* to.
3d.  That the said bond is otherwise insufficient,
and void.   Further answering, the defendant
charges, in substance, that the principal appeared a\
next term of the court, and was by the sheriff arre
upon the same charge after indictment; that he did\
execute the bond, nor did he authorize any other per\
to execute the same for him, nor was it done by \

knowledge, or consent, and that the said bond as set forth is not his act and deed. Defendant Gary states that his genuine signature is attached to the bond, but that at the time he signed the same it was blank, and no amount was stated in said bond, nor were there any specific conditions set forth in said bond; and that at the time he signed the bond it was handed him by *J. H. Baker*, in blank, who stated that he, Baker, wanted to give a bond for three hundred dollars and wished this defendant to sign it; which defendant did on the statements and representations as aforesaid; and that all other written parts of said bond above the signature thereto were done and performed by parties unknown to this defendant, and without the knowledge, privity, or consent of the defendant; all which he is ready to verify.

The special exceptions of the defendants to the sufficiency of the bond were overruled, as were those of the State to the plea of *non est factum* by the defendant Gary. The case being submitted to a jury, a verdict was returned in favor of the State for the amount of the bond, to wit, $1,000. A motion for a new trial being overruled, the appellants bring the cause to this court by appeal.

There are four questions presented for our decision, upon which depend the action and rulings of the court below upon all points raised by the appellants. The issues in this case are upon legal principles, and not upon facts. Let us condense and re-state the issues. 1st. Must the bond in terms require the principal to appear and *answer* the *offense?* 2d. If the bond was signed in blank by the sureties, knowing the purposes for which it was intended to be used, to be filled by others, are they liable on such bond? 3d. By the return of the sheriff upon the *capias* issued for the same offense it appears that the principal had been re-arrested; can the sheriff's return be contradicted so as to show in fact that he was never arrested? 4th. There having been a trial and verdict for

the appellants, had the court below the legal right to grant the *State* a *new trial?*  Let us notice these propositions in the order in which they are stated.  1st. Must the bond require the principal to appear and *answer* the offense, or charge?

This bond sets out the offense with which the principal is charged, and for which the bond was given to secure his appearance.  The bond is conditioned that he, Baker, "shall make his personal appearance before the Criminal District Court of Galveston county, at the next ensuing term of said court, to be begun and holden in the city and county of Galveston, on the 7th day of September, 1874, and there to *remain* from day to day and from term to term until discharged, then this bond shall be null and void, otherwise to remain in full force and effect."  This is not in the usual form.  The condition does not require the principal to "*answer* the charge preferred," nor said charge, or the offense alleged against him.  We think, however, that, as the offense is named in the bond, the court, time and place for his appearance specified, and that he is required to attend from day to day and from term to term, until discharged, it was not necessary for the bond to contain the condition, to "answer the charge," or to "answer the offense," etc.  This precise question came before our Supreme Court in two cases, and it was by that court decided in both cases that it was not required.  Believing the decision in those cases to be correct, we are not disposed to overrule them.  *State* v. *Becknall*, 41 Texas, 319; *Goldthwaite* v. *State*, 32 Texas, 599.

2d. The bond being signed in blank, are the sureties liable?  The facts in relation to this matter are these. The day before the bond was given, Baker went to the justice and asked for a blank bond, in order to get the signatures of the sureties, and intending to waive an examination and give bond.  The justice gave him the

blank bond. Baker presented this blank bond to Gary, telling him that he would be required to give a bond for the sum of three hundred dollars, and asking him to sign the bond for that amount. Gary signed the bond for that amount, but did not expressly authorize him or any person else to fill the blank for any other amount. The bond was not filled in his presence, or with his knowledge, authority, or consent, unless expressed from his signing in blank. Baker on the next day waived an examination and presented to the justice this bond, signed by Gary. The justice filled the blank, fixing the amount at $1,000. The blanks being all filled, the bond was then signed by Baker and Bondies, and was approved by the justice. Bondies in his answer alleges that he signed the bond in blank. The evidence does not sustain him in this, but evidently shows to the contrary.

Under the above state of facts, is Gary liable on this bond thus executed? We are of the opinion that he is. If the justice of the peace in this case occupied the same relation in the bond to the surety, Gary, as the holder of a bill or note does to the maker who signed the note in blank, the sureties' liability could not be questioned; for it is now settled that, if a party sign his name to a blank paper, to be afterwards filled, as bills and notes, over his signature as drawer or maker, and afterwards completed by the holder, he becomes absolutely bound as if he had signed them after their terms were written out. Further, that the fact of his name being upon the blank purports and is in law authority to the holder to fill them with any amount, and "with any terms as to the time, place and condition of payment;" and that, though the party may annex limits and conditions as to the terms and amount, if these are not known to the holder and are exceeded by the person in whom he confided, the maker, or drawer so signing is nevertheless liable. Nor does the principle apply to negotiable instruments alone; it applies as well

to non-negotiable as to negotiable paper, and our own .Supreme Court, supported by authority and, as we think, reason and justice, have extended it to deeds signed in blank.

Concerning the supposition that the justice bears the same relation to the surety, Gary, as the holder of a note does to the. maker, it may be urged that, as the justice knew that Gary signed in blank, he was bound to inquire as to the extent of the authority, and, failing in this, if the authority was exceeded and violated, the surety would not be bound. The authorities are divided upon this point. We are of the opinion, however, that those holding that the holder is not bound to inquire are evidently sustained by reason and justice. When Gary signed the bond in blank, knowing the purpose for which it was intended, he made Baker his agent, and when presented to the justice, thus signed, it was in effect saying to the justice, "fill the bond for any amount, I am his surety." He is therefore estopped from urging the breach of trust and confidence by his agent. The power of his agent was without limit upon its face. The justice, being ignorant of the restriction *in fact*, was not bound thereby, but had a right without further inquiry to presume good faith on the part of Baker, the agent, and insert the $1,000, and approve the bond thus executed by all the parties. · We think the authorities fully sustain the above views.

The *third* proposition: That the principal, Baker, being arrested upon the same charge, as appears by the return, was it permissible to contradict the return by showing in fact that he, Baker, was not arrested? We will consider this question upon the supposition that the return of the sheriff that he had "executed" the *capias* was equivalent to a return stating that he had "taken the body" of the principal, Baker. The question is presented for decision: Was it permissible in *this* case to allow the

State to contradict this return, and prove that in fact Baker was never arrested? The defense aimed at consists of facts. Certain facts must have occurred in order to support this defense. The principal must have been arrested in *fact*, upon the same charge. If Baker was arrested upon the same charge, then the defense was complete; if not arrested, then no defense. Is the return conclusive of this fact? The common law will not permit returns to be contradicted. In this State this question is not settled. In one case the return is held *prima facie*, that is, it is spoken of as such; in another, fraud or mistake must be shown. An exact state of facts similar to those of this case has not been passed upon by our Supreme Court,— to wit, a case in which the return shows service when in fact there was no service.

We are of the opinion that when no rights have vested, no rights of *bona fide* parties intervened, that the return is only *prima facie* proof. The contrary doctrine would result in some cases in great wrong, without any fault, to the party injured. To remit the party to his action of damages against the sheriff in a great many instances would be fruitless. The sheriff may be insolvent, and so may be his sureties. Let us suppose a case. A. sues B. on a claim to which B. has a good defense. The sheriff or constable returns that he has served B., when in fact he has not. A. gets judgment against B. by default; execution issues against him, whereupon he, B., seeks to set aside the judgment upon the ground that he has had no notice of the suit:— must he be told *by a court of justice* that he can not and will not be heard, and to pay the money and look to the sheriff or constable? This appears to us to be in violation of that principle which will not permit a citizen's property to be taken without due course of law. No principle can be just which deprives a person of his property without giving him a hearing.

We have been considering this case upon the supposi-

tion that the return of the sheriff purports an arrest of the principal, Baker; concluding upon that view that the return would not be conclusive. But this return is not the usual nor the proper return. It does not purport to be an arrest of the principal. The ordinary and, we think, the proper return to be made is that the *capias* was executed by arresting or taking the body of the party mentioned therein. But, be this as it may, the Code provides that when a defendant, who has been arrested for a felony, under a *capias*, has previously given bail to answer said [the same] charge, his sureties should be released by such arrest, and he shall be required to give new bail. The arrest operates the release; it must be proved. Nor will any return of the officer conclude this fact and thereby deprive the State of the right of showing the truth of the matter. The return is not a process in this case, but is independent, extraneous matter, upon the truth of which an issue can and rightfully should be found. That Baker was arrested in fact is not affirmed, nor will it be asserted by any one with the least respect for the evidence as shown by the statement of facts.

The fourth proposition. The jury having returned a verdict for the appellant, was it legal for the court below to grant the State a new trial? The learned counsel for the appellants insist that as, under the decision of this court, *scire facias* cases are criminal in their nature, and as a new trial cannot be granted in criminal cases, therefore the verdict of the jury in favor of the appellants was an end to the matter. To solve this question, it is necessary to refer to a provision of the Constitution and to article 3135, Paschal's Digest, which is a provision of the Code of Criminal Procedure. The Constitution provides that no person for the same *offense* shall be twice put in jeopardy of life, nor shall any person be again put upon trial for the same *offense* after a verdict of *not* guilty. The appellants were not prosecuted for an offense, nor

was the verdict "not guilty;" hence this provision has no application to the point at issue. Article 3135: "A new trial can in no case be granted when the verdict has been rendered for the defendant." In what character of cases the article does not state, but evidently in cases in which the party is prosecuted for an offense. This provision was in full force and effect when appeals were allowed the State in *scire facias* cases. It follows, therefore, that, if the State had the right of appeal the effect of which would result in a new trial to the State, if successful, the court below could have legally granted it in the first instance. The right to appeal by the State in these cases, to wit: *scire facias*, was in force at the time when the new trial was granted; this being the case, the action of the court in granting a new trial cannot be questioned. But suppose it to have been otherwise, it does not follow that because the State has no right of appeal in these cases, and that they are criminal in their character, it was not entitled to a new trial. There are cases in which the parties have a right to new trials, yet are denied the right to appeal. We fail to see the correctness of the conclusion sought to be drawn from these facts.

We have endeavored to give to the propositions presented by counsel for appellants the closest examination. We have, however, failed to discover any such error as requires a reversal of the judgment. It must be affirmed.

*Affirmed.*